Verdict <em>pro quer. instanter.</em>

Messrs. Hamilton, Duncan and Woods, *pro quer.*

Messrs. Brown and Riddle, *pro def.*

---

## AT NISI PRIUS, AT READING, SEPTEMBER ASSIZES, 1799.

### CORAM, YEATES AND SMITH, JUSTICES.

JOHN LUDWICK assignee of JACOB BOLLINGER, *against* MICHAEL CROLL.

One having a good defence against his bond, promises [to pay it, and thereby induces a person to procure the assignment thereof, he shall be concluded aliter, where ignorant of his defence, he acknowledges his liability, after the assignment.

DEBT 550*l.* Plea, payment, with leave to give the special matter in evidence. Replication *non solvit* and issue.

The facts on the trial appears as follow :

Bollinger, an inhabitant of North Carolina, an adventure of slender property, claimed a right to 1,152 000 acres of land in Powel's Valley in the state of Kentucky, under a pretended survey made on the 18th June 1795. This survey, on the face of it, bore the plainest marks of a forgery, and was admitted to be such by the plaintiff's counsel. On the 8th June 1796, he conveyed these lands to the defendant and four others, in consideration of one cent per acre ; and the defendant paid him 200*l.* in goods, and gave him two bonds conditioned for the payment of 275*l.* each, by instalments.

One of these bonds had been assigned to one Eckenwelder, whom the defendant had satisfied. The other formed the subject of controversy, and had been assigned to the plaintiff on the 24th June following. No part

of the consideration appeared to have been paid by the other pur-
chasers for their proportions of the lands; and Bollinger disappeared
shortly after his conveyance.   While the defendant believed he had
a good title to the enormous quantity of 230,400 acres of land, and
within two or three months after the contract the defendant was
well satisfied with his bargain, and having heard that the plaintiff
had got one of the bonds by assignment, acknowledged in the pres-
ence of two witnesses, that he must pay it off.   On this circum-
stance the plaintiff's counsel relied for the recovery, and submitted
the matter to the court without argument.

*Sed per cur.*   If the plaintiff, ignorant of the unfairness of the
original transaction, had been induced to obtain the assignment of
the obligation, by the defendant's promise to pay it, the latter ought
to be bound by his engagement, notwithstanding the great hard-
ship of the case; for he would be the cause of the deception, and
his admission would operate as a new contract between himself and
the plaintiff.   But the acknowledgments in the present instance,
could not have influenced the plaintiff's conduct, having been
made several months after the assignment.

Equity will relieve against a plain mistake, or misapprehension,
or against ignorance of title, though not under all given circum-
stances.   1 Vern. 32. Vez. 126, 400. 2 Bro. Cha. Rep. 150. 1 Fon-
bla. 106.   To make a receipt in full of all demands, a conclusive
bar, it must be given with full knowledge of all the facts. Espin.
Ni. Pri. 174. Vide. *Ib.* 156.   And one may avoid a promise, by
showing there was do consideration for it. 1 H. Bla. 64.   An indor-
ser of a bill of exchange, discharged by the laches of the indorsee, in
not giving due notice of its non-acceptance, and afterwards mak-
ing a subsequent promise to pay the bill, being ignorant at the
time that he was no longer bound to pay the same, the same shall
not bind him. 5 Burr. 2670.

As between the obligor and obligee, who had swindled him
already out of 475*l.*, no possible doubt could exist.   The assignee
of a bond takes it at his own peril, subject to every defence, which
might be set up against the obligee. 1 Dall. 23. and the admissions
of the defendant after the assignment, while his delusion continued
as the fancied proprietor of a large tract of country, cannot con-
clude him on any principle of law, equity or good conscience.

The plaintiff suffered a nonsuit.

Mr. Clymer, *pro quer.*   Mr. Spayd, *pro def.*